IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALMA GARCIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No.: 17 cv 04477 |
| ) | |
| DRAW ENTERPRISESS III, L.L.C., ) | |
| ) | |
| Defendant ) | |

**DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT
AND SUPPORTING MEMORANDUM OF LAW**

Plaintiff was employed as defendant's payroll administrator from January 21, 2014 to April 25, 2017. She claims she is owed more than $25,000 for unpaid overtime work. She also claims she was terminated in retaliation for bringing her unpaid overtime claim to the attention of her supervisor. The defendant denies both claims. Although there are factual disputes over whether plaintiff performed unpaid (and admittedly unreported) work, she has no evidentiary support for the other elements of her claims.

**I.   Unpaid Overtime Claim**

**A. Facts**

Plaintiff was the payroll administrator for defendant Draw Enterprises. It was her job to make sure employees document the hours they worked. (Paragraph 2). (All references are to Defendant's Statement of Uncontested Facts). Draw used the services of a payroll company called ADP. (Paragraph 5) Hourly employees of Draw were required to log on to ADP's website and record their hours worked, including overtime hours. (Paragraph 4) Employees were paid based on the hours they logged on the ADP website. (Paragraph 3) Plaintiff was always paid for any overtime she logged on the ADP system. (Paragraph 6)

1

Plaintiff claims she did not log all the overtime hours she worked. (Paragraph 7) According to plaintiff, if she "knew it was going to be a large period of time, then I would log in." (Paragraph 12) She claims she did not log in to claim overtime hours if it was "20 minutes or 30 minutes." (Paragraph 10) She thought logging on to claim 20 or 30 minutes was "too much bother." (Paragraph 7) She admitted that it took less than a minute to log on to the ADP website. (Paragraph 11)

Plaintiff kept no records to document the unlogged overtime she claims to have worked. (Paragraph 9) Nonetheless, she now claims she worked five hours of unreported overtime every week of her employment with Draw. (Paragraph 26) In her lawsuit, she asks that Draw must now pay her for the five hours of overtime that she says she worked but did not log on the ADP system.

### B. Legal Standards

Plaintiff's complaint is brought under the Fair Labor Standards Act, the Illinois Wage Payment and Collection Act, and the Illinois Minimum Wage Law. To prevail on her unpaid overtime claim, she must show that her employer, with actual or constructive knowledge that the employee was working overtime, failed to pay for all overtime hours worked. *Allen v. City of Chicago*, 865 F.3d 936 (7th Cir. 2017). The plaintiff also has the burden to present "credible evidence" as to the amount of her damages. *Custom Automated Machinery v. Penda Corp.*, 537 F.Supp.77 at 85 (N.D. Ill. 1982). The evidence must be sufficient to allow a reasonable fact finder to calculate damages on something more than speculation or guesswork. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 124 (1969). The plaintiff must present a reasonable basis for the jury to compute damages. *Harbor House Condo. Ass'n v. Massachusetts Bay Ins. Co.*, 703 F. Supp. 1313, 1318 (N.D. Ill. 1988), aff'd 915 F.2d 316 (7th Cir. 1990).

In cases brought under the FLSA, courts have relaxed this burden where "the employer's own actions in keeping inadequate or inaccurate records made the best evidence of such damages unavailable." *Brown v. Family Dollar Stores of IN, LP*, 534 F.3d 593, 595–96 (7th Cir. 2008) Under those circumstances, the employee must only "produce sufficient evidence to show the amount and the extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, at 687 – 688 (1946). *Anderson* recognized that where an employer failed to keep the proper and accurate records required by the FLSA, the employer rather than the employee should bear the consequences of that failure. *Brown*, at page 595.

### C. Argument

In our case, the plaintiff was defendant's payroll administrator. Plaintiff was the one responsible for creating and keeping adequate and accurate records. It was plaintiff's "own actions in keeping inadequate or inaccurate records" that "made the best evidence of such damages unavailable." (Quotes, admittedly out of context, are from *Brown*, above). At the very least, an employee should not be allowed to exploit any self-created gap in defendant's record keeping.

Plaintiff admits she did not make any record of her now-claimed but previously unreported overtime hours. Her demand to be paid for five hours of unreported overtime for every week of her employment with defendant is not supported by anything. Making an unsupported claim does not create a fact question.

Moreover, assuming plaintiff did some unclaimed work, she was the cause of her alleged underpayment. She admits she was paid for all the overtime hours she reported. She knew she had to document any hours she worked – including overtime hours, to be paid. By choosing not to report her alleged extra work, she caused her own damages.

## II.     Retaliatory discharge

### A. Facts

Plaintiff claims she was discharged "in retaliation for her complaints that defendant failed to pay overtime wages for all hours worked in excess of 40 hours per week." (Paragraph 27) She bases this claim on a conversation she had with her supervisor, Tina Matt. She does not recall the date of the conversation, but states it was in early 2017. (Paragraph 28) The conversation took place as Ms. Matt and plaintiff were sitting at their respective desks and talking generally about a number of subjects. (Paragraph 29)

During the conversation, plaintiff told Ms. Matt that she answers phone calls and responds to emails after hours. (Paragraph 30) She told Ms. Matt that she has not been logging on to the system and claiming these hours. (Paragraph 31) Ms. Matt told plaintiff that she should claim those hours and should be paid for doing this work. (Paragraph 32)

> Question: Did she say that work at home is overtime?
> Ms. Garcia: No.
> Question: Was it just you made a comment that you do this and she said that you should be paid for it?
> Ms. Garcia: Yes.
> Question: Did that conversation go anywhere else?
> Ms. Garcia: No.
> 
> (Paragraph 33)

According to plaintiff, Ms. Matt did not give her the impression that she had done anything wrong. (Paragraph 17) Nonetheless, when asked why she was terminated, plaintiff stated as follows:

> Ms. Garcia: Because I had the conversation with Tina and I'm thinking she went and told Jeff and Frank III.
> 
> (Paragraph 34)

4

Plaintiff admitted she does not know if Tina actually talked to Jeff and Frank about this issue. (Paragraph 19) When asked why she thought Ms. Matt reported the conversation to her superiors, plaintiff said as follows:

> Ms. Garcia: Because everything was fine. I didn't – everything was fine and all of a sudden, I have that conversation and a little bit after, I'm let go.
> (Paragraph 35)

Other than this supposition, plaintiff does not know of "any evidence to support a connection" between being terminated and what she said to Tina. (Paragraph 20) To her knowledge, no other employee faced any negative consequences based on the amount of overtime worked. (Paragraph 13) Plaintiff was terminated on April 25, 2017. (Paragraph 36)

Tina Matt was hired as defendant's HR Director in late 2016. She was no longer working for Draw by the time of her deposition. Ms. Matt said she did not tell Frank about the subject conversation with plaintiff. (Paragraph 37) She said plaintiff was let go because she "would not help me succeed in my position." (Paragraph 38)

> Ms. Matt: She was there before I was hired, and I needed resources to help me get acclimated to the company's – and—and how to work with their payroll system. And she was very short and her – her famous answer was "I already told you that, I already showed you that." And that every time I asked her a question. And I – I just gave up and just figured it out on my own.
> (Paragraph 39)

Ms. Matt also commented about plaintiff's shortcomings in returning phone calls from employees. Managers who left unreturned messages for plaintiff called Ms. Matt "because they needed an answer." (Paragraph 40) She also heard from Frank Ward about complaints to him concerning plaintiff's not returning calls. (Paragraph 41) When asked about any complaints concerning plaintiff's attitude, Ms. Matt said, "Just the – the constant complaining and negativity." (Paragraph 42)

5

Frank Ward III is in-house counsel with defendant and supervises human resources and information technology. He was Tina Matt's supervisor at the times relevant to plaintiff's termination. He was involved in the decision to terminate. (Paragraph 43) When asked to explain the termination, he stated as follows:

> During the time Tina was there, I had to count on (plaintiff) to – to train Tina and bring her up to speed. And she just had – had an unwillingness to work with Tina which ended up leading to her termination.
> (Paragraph 44)

Frank made the decision to terminate the plaintiff after discussions with Jeff Godfrey, the company's controller/chief financial officer. Frank made Jeff aware "of the issues I was having with (plaintiff) not being willing to work with Tina. And when it became apparent that it was not going to work, we spoke and made the decision." (Paragraph 45)

Exhibit 5 to Frank Ward's deposition is the performance review he prepared for plaintiff's last annual review. (Paragraph 46) The review, dated 2/9/17, includes a note that she "needs to show more willingness to provide proper training and directions to newly hired HR manager Tina." (Paragraph 27) Under the heading "Communication" the review includes the following:

> Must be sure to communicate all HR related issues to HR Manager. Needs to be sure to answer phone or return voice-mails from co-workers. Have heard numerous complaints that it is difficult to get in contact with (plaintiff) over the phone.
> (Paragraph 48)

Plaintiff's performance for the categories of "Interpersonal relationships" and "Communication" were rated as "Improvement Needed. Performance is deficient in certain areas. Improvement is necessary." (Paragraph 49)

Jeff Godfrey is the controller/chief financial officer for defendant. (Paragraph 50) He oversaw accounting but did not have a direct supervisory relationship with plaintiff as of the time of her termination. (Paragraph 51) He spoke to Frank Ward about plaintiff's termination.

6

According to Jeff, plaintiff was terminated because she wouldn't work well with her supervisor, Tina Matt. (Paragraph 52) Jeff never heard of any concerns plaintiff raised about not being paid for all the time she worked. (Paragraph 53)

### B. Legal standards

To make out a case for retaliatory discharge, the plaintiff must offer more than a "sequential connection." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769 (7th Cir. 2012). The plaintiff in *Gordon* claimed she was terminated because she was injured on the job. The fact that her position was eliminated one day after she sought medical treatment "is favorable to Gordon's case but, on its own, is not enough for a jury to infer that Fed Ex was improperly motivated." *Gordon*, at page 775) See also *Milligan-Grimstad v. Stanley*, 877 F. 3d 705, 711 (7th Cir. 2017)("suspicious timing alone is rarely enough to survive summary judgment, particularly when there are reasonable non-suspicious explanations for the timing of the termination.")

### C. Argument

In the present case, it is not even clear that there may have been "suspicious timing." Plaintiff says only that the subject conversation was "early in 2017." Ms. Matt did not remember when the conversation took place. (21) Plaintiff was terminated on April 25, 2017.

Moreover, there are reasonable non-suspicious explanations for the timing of the termination. Plaintiff had been warned in February that she "needs to show more willingness to provide proper training and directions to newly hired HR manager Tina (Matt)." She was told that "improvement is necessary." Plaintiff was also warned about "numerous complaints that it is difficult to get in contact with (her) over the phone. (Paragraph 54) She was told that improvement on this issue was also necessary. (Paragraph 55) She did not improve. There is insufficient

7

evidence to support a connection between plaintiff's comments to her supervisor and her termination.

### III. Conclusion

Plaintiff admits she was paid for all overtime she logged in to the payroll system. She says she worked more overtime than she logged and that the defendant knew about it. The defendant denies her claims. A resolution of these questions is not available in a summary judgment motion.

Nonetheless, plaintiff must also be able to present sufficient evidence to prove her damages. She must be able to show that her termination was in retaliation for her wage claim. Her inability to do so means that this case can be resolved by summary judgment.

For the foregoing reasons, the defendant moves for summary judgment in its favor as to each of plaintiff's claims.

Respectfully submitted,

**STOTIS & BAIRD CHARTERED**

BY:   /s/Michael S. Baird
      Michael S. Baird

**Attorneys for Defendant**
**STOTIS & BAIRD CHARTERED**
**200 West Jackson Boulevard, Suite 1050**
**Chicago, Illinois 60606-6941**
**312/461-1000**
**mbaird@stotis-baird.com**